May it please the court, my name is Ashish Desai. I represent the plaintiffs and the appellants in the underlying case. I'd like to say five minutes for a rebuttal. The main question we have here is, do the pharmaceutical representatives make sales under the FLSA? The regulations in the statutes, when you actually read them, show that they do not make any type of a sale. This was recently confirmed by the whether they make, you say that that's the dispositive issue, but this statute, this question of whether or not they qualify, that they're under an exemption, is it not? That's true. The FLSA, the language of the exemption is what? The language of the exemption is, is under 13A1, okay, so any employee that's employed in a bona fide administrative capacity or as an outside salesperson, as that's defined by the regulations of the Department of Labor, is entitled to the exemption. So in this particular case, we have to look and see what the regulations actually state, and so when we move to the... But the statute says outside salesperson. Correct. Okay. Now... The statute specifically gave authority to the Department of Labor to promulgate regulations to further define these terms, right? That's correct, and Novartis and the Department of Labor both come in here on the side of the pharmaceutical representative to say that there are no sales being made, as that is defined. Okay, the language of the regulation is... Can you read that? Yes, I can, Your Honor. There's several regulations that we should look at, and the first one is 29 CFR 451.500. In that particular regulation, the department says that it limits outside sales to individuals who make sales, and that means you get product for consideration. You give them something, they give you something, that's what a sale is. In this particular case, that just doesn't happen. If you move on with the regulations to have a full... Before we move on from that point, I'm sort of stuck on the same issue that Judge Schroeder is asking you about. As I understand the historical role of a detail person, it is to call on doctors in order to stimulate their writing of prescriptions, which results in... Sales. Sales. It's true that the FDA will not allow the detailman to solicit the sale directly from the physician, because there are medical ethical issues involved that may not necessarily be in the best interests of the patient. But, if those activities aren't directed towards selling, I don't know what is. I mean, these physicians are advertised as sales physicians, we send these people to training schools, where we tell them how to collect data, and we don't really do anything about it. We close the deal and get the commitment for the sale, they leave samples, and you can try our product and see how good it is, and the district judges who have faced this question have all said, there's got to be some common sense that's applied here, and the department's position doesn't seem to reflect reality. So, can you help me on that? I can, Your Honor. It does reflect reality, because what we're talking about is the difference between promoting and selling. When Your Honor was talking about driving demand, that simply is not the legal definition. A sale occurs when someone transfers product for consideration. In this particular case, the underlying courts and Judge Tomlin was talking about a situation where he said, well, but maybe the test ought to be you stimulate demand. The problem with that is stimulating demand, or promotion work, is completely different than closing a sale. Well, you know, nobody in this industry makes sales other than the pharmacist. I'm sure. So, I mean, that's an overgeneralization, but with respect to prescription, it's not true? That's not true. In fact, what happens is the pharmaceutical company actually does make a sale to the wholesalers. The wholesalers then sell it to the pharmacist. So, in essence, you do not need a prescription to have a sale. There is a sale that occurs in this industry. So, the district court opinion is a whole. But those sales would never be made if it weren't for the fact that the detail men are going around trying to get the doctors to write the prescription. That's not true either. The pharmaceutical companies understand that part of what influences a doctor might be having promotions made by pharmaceutical representatives on a one-to-one basis. They also know that they can stimulate sales by having ads on TV. Okay, so who is a salesperson in this industry? If anybody is a salesperson in this industry, it is the people that work in the trade relations group who are actually forming contracts. The regulations are clear. Novartis is clear. Who are those people and who are they forming contracts with? They work for OrthoMcNeil, the pharmaceutical companies. They are forming contracts with the wholesalers. They are forming contracts with the pharmacies. They're saying, how much of this product do you want? They're obtaining contracts. They're saying, we can negotiate the price of that. You want to get a volume discount? We'll do that. But their phone would never ring if it weren't for the fact that the detail men are out there beating on the doors of the doctors who are trying to shoo them off so they can go see their patients. That may be true and it may not be true, but that's not the test. The test is, under the regulations, you actually have to be forming sales. Now, what does a sale mean? Under the CFRs, it says that, well, let's go to the FLSA. The FLSA defines sale as any sale that doesn't happen here. The best case scenario we have is that they're stimulating sales made by somebody else, exchange a contract for sale. They don't form any contracts. A consignment for a shipment of sale or some type of an other disposition or transfer of the goods. There's none of that occurring in this particular situation. Why doesn't the other disposition, whatever that phrase means, cover this situation? Where, in essence, it's a team sales effort where there are a number of folks who are involved before the sale is actually booked. But they're all an integral part of the selling effort. Because if the test is to stimulate demand, it would expand exemption to almost anyone in that cycle. Does everybody in the cycle get a bonus or an incentive as a result of increased sales? No, they do not. They do not get commission payments. Now we're going to the indicia of sales factors. So, under your interpretation, the person who answers the phone in the, what was it, trade relations group office, is just paid an hourly rate or a monthly salary and they don't get the bonus for doing all the work to beat the bushes to make the sale. First of all, pharmaceutical representatives don't get any bonus for making a sale. 26 to 41 percent. No, but that's not for making the sale. This bonus is based upon national and regional and accessible numbers. So, in other words, if the company is doing good, that's part of their bonus. It has nothing to do with the sale. So, you think that if the sales in the Pacific Northwest fell, notwithstanding their best efforts, they would still get bonuses? Maybe. And they might get regional bonuses. They share it with other pharmaceutical representatives. So, the bonuses are just a rewarding effort? It could be profit sharing. If the company does good, we all do good. That type of a thing. Where in the record is this described as a profit sharing program? I didn't see a single phrase. Their 30B6 deposition that was taken, we asked the question, do the pharmaceutical representatives earn a commission? In other words, every time they make a sale, do they get a cut or a piece of the action? The answer was no. A commission is not profit sharing counsel. Correct. A commission has a nexus to the actual sales that are made. And they answered no. That there is no nexus. Right. Okay. I share some of the real world nexus problem that my colleagues seem to share. But what I'm hung up on this case, how I'm hung up, is what deference we owe to the agency. Is it our deference that we owe? You do owe them our deference. Okay. Under the circumstances, the standard for that, if we find that the real world, as represented by the record, just doesn't make any sense when you compare it to what the secretary has determined, how does the our deference apply in that case? Well, you have to take a look at what the real world situation actually is. In this particular case, the court seems to be hung up on this, and I'll call them the jewel key factors that were announced by the 10th Circuit. I think we're all talking about that. Let's not sugar coat it. In that particular case, those individual salespeople, they worked independently. They worked with no supervision. In this particular case, the pharmaceutical representatives work on a team. They work on pods. They get daily emails. They get daily phone calls. There's a computer system that monitors every single sales call they make. They have to put in that computer system what they talked about, what drugs they're promoting, what they plan to do the next time. They have ride-alongs with their district manager. They have to have weekly meetings with their district managers and the other people on the team. They hardly work independently and hardly work without any supervision. In jewel key, commission salespeople, the more you work, the more money you make. We all know that's what commission sales is. In this particular case, there are no commission sales. They can't sit back and say, if we work five more hours, if I get this particular doctor to prescribe or stimulate sales, here's what I can expect to get. There's none of that relationship present. May I ask you a question? Yes, sure. I think that is an important point. In the promulgation of the regulations, is there anything in the regulatory history, notice and comment, anything else that would reflect any discussion about either specifically the pharmaceutical industry or the importance of the existence of commissions for outside salespeople that is behind one of the reasons for this definition? Well, the regulations, I don't believe, talk about the importance. No, no. I'm asking about the history. There must have been promulgated. There must have been notice and comment. I'm sure. Didn't the pharmaceutical industry play a part in that? Do we know? Sort of the policy behind the regulations is to determine when do you actually have a sale and when do you actually have promotion work. And if you take a look at the regulations on 503B, this is still in the 541 series, they distinguish promotional work from sales work. And they say if you stimulate sales... May I ask you a question, counsel? I was asking about the notice and comment. Well, I think in the notice and comment section of the Fair Pay Act of 2004, there were some discussions about the fact that commission people, when they work more, they get more money. And so that's why you don't have to pay them overtime. Let me try this differently. Wasn't there comments from the U.S. Chamber of Commerce, the Grocery Association, basically saying to DOL, you've got to give us some flexibility here with regard to the way our salespeople work in the field? There were. But the common denominator of all those considerations were that you were actually making a sale in the first instance. Well, did the pharmaceutical industry weigh in with comments? I'm not sure if they did, Your Honor. That's the short answer. Okay. So we don't know if this was a situation where the pharmaceutical industry and others who employ salespeople like these reps urged the DOL to exempt them, but the department decided in its wisdom that it would not, and therefore rejected the comments when it passed, when it enacted the regulation. The department is here, and I would urge the panel to ask them. That's probably a better question for them. Can I ask you this question with respect to the DOL? The DOL has filed an amicus brief in this case in support of your position. I know what our deference is. What deference, if any, is this court to give to an amicus brief filed by the Department of Labor? We think that it's all six in one, half a dozen in the other. There are two cases that have been consolidated. The Department of Labor has made its position clear on this. We think it's all entitled to our deference. And remember, even if you don't believe it's entitled to our deference, there's still the Second Circuit Novartis decision that is out there. We would ask that the Ninth Circuit respect the opinion of the Second Circuit, not create a split between the circuits, and therefore conflate this area of law even more than it already has. This would create, if we decided contrary to your position, it would create a circuit split. Without question. Because of Novartis. Without question. And the issue would probably go up to the U.S. Supreme Court. Well, we're used to that. It's not a threat. I'm trying to avoid that, Your Honor. We almost feel... But for the record, we try to do what the Supreme Court tells us. Right. We feel disappointed when they don't pay attention to it. Let me just ask one other thing before we hear from the Department of Labor. The death state case, which deals with the state law portion of this complaint, is before the California Supreme Court, before our panel, which referred it to the California Supreme Court, and we need to know what they're going to say. Do you agree that, at least as to that portion... I thought they rejected it. The Supreme Court rejected the certification, but the case is still before the panel on the state administration, the California Labor Code administrative exemption. We think that the court should, in this particular instance, rule on the administrative exemption. That's different from what we said in our briefs, and here's why. In the intervening time, Novartis came down, the Department of Labor came down to clarify the standard for discretion and independent judgment on matters of consequence. Remember, everyone says they have discretion. If you ask a janitor, do you have discretion, they'll say yes. If you ask a police officer, do you exercise discretion, he'll say yes. If you ask a fireman, he'll say yes. That's not the test. The test is whether you exercise discretion and independent judgment on matters of consequence. In this particular case, the Department, and particularly if you follow Novartis, have taken a look at what the pharmaceutical representatives do. The fact that they can come in and schedule some appointments with doctors doesn't mean that they're subject to the admin exemption. Okay, thank you. We are over time, so we'll give you a minute on rebuttal. Thank you, Your Honor. Thank you. We'll hear from the appellate. Are you appearing in this case? Yeah, I'm on behalf of the defense and the appellate. Yeah, that's who we want to hear from. Okay. I want to make sure. May it please your Court, John Battenfeld on behalf of the defendants and the appellees. I want to first of all talk about how in this case we meet the definition of making sales. There's two ways. The first way is that there is a sale, and it's achieved through a two-step process, which is how sales are made in this industry. And the prescription written by the doctor is an absolute necessity for a sale to happen. In fact, one of the plaintiffs in this case, Ms. Donnelly, said it best. She said, in order for there to be a sale, there has to be a prescription. And all of the plaintiffs testified that it was their goal to convince physicians to prescribe their specific drugs for patients who had a medical need, and that they achieved this goal by increasing the amount of prescriptions written by physicians that they met with in their territory. But you... I respect what you're saying on this, counsel, but specifically, this is a hybrid area. I mean, there are no contracts. There are no purchase orders. There's no negotiation of prices or amounts. There's no obligations when these people leave the doctor's offices. Compensation is not exclusively based on a commission-based work. This is a hybrid. It's a hybrid. And under the circumstances, I'm just having real difficulty getting around our problem. I mean, as I understand it, we have to find the Department of Labor's regulation is, in quotes, plainly erroneous or inconsistent with the regulation, according to what the Supreme Court says. As much as we love them, and as much as they like to see our work, I don't know that we necessarily need to go there if we are bound by the Department of Labor's consideration of this issue. They filed an amicus brief in this case. So we're not talking about an abstract, although I think what my colleagues ask about the notice of comment period is very important in terms of how the regulation was formed. It's certainly clear that the Department of Labor today is very adamant in its view that these folks, you know, they don't follow any exemption. What are we to make of that? Yeah, let me address that. I think the most important reason why the Department of Labor's interpretation is not entitled to deference is because it actually is inconsistent with its own regulations and with the preamble to the regulations from 2004. And it's not entitled to deference in those circumstances. What was the position of the Department of Labor when the regulations were first promulgated insofar as these particular folks were concerned, the PSRs? There is nothing in the notice and comment discussion that indicates any request from the pharmaceutical industry or the plaintiff's bar with respect to this particular industry. However, there was a clear discussion about how the definition of sales had to be flexible given the number of different ways... That's what the Chamber of Commerce and the pharmaceutical industry asked for, right? Not the pharmaceutical industry, the Chamber of Commerce. Okay, and is there anything in the regulations that specifically responded to that request? Yes, there is. I mean, there are a couple of things. First of all, what the regulations say is that the exemption applies not only if you consummate a sale, which is the position taken by the Department of Labor now, but their own regulations say you also are exempt if you are directing efforts toward the consummation of a sale. It's an either-or. And that's exactly what's going on here with the efforts that are directed... What's the cite on that? Sure, that's 541.503. And in addition, 541.500 says that the exemption applies to an employee's own outside sales or solicitations. So they use sales or solicitations. Again, they are soliciting the doctor's... Counselor, I read that language and it appeared to me that it had to relate to the salesperson's own sales. And I think we all agree that the sale is not consummated when the detailman visits with the doctor. Well, what happens when the sales representative visits the doctor is it is his goal, and if he's successful, what he achieves is the writing of a prescription by the doctor. And a prescription is, by law and by dictionary definition, an order. And the regulations specifically recognize that an order can in fact constitute the type of result that qualifies for the outside sales exemption. There's a specific example given where they talk about... They say exempt status does not depend on whether it is the sales employee or the customer who submits the order for the product. That's in the preamble and that's a specific statement from the Department of Labor. The Department of Labor nowhere addresses that statement in its amicus brief. It just ignores it. Well, maybe I didn't make my question very clear, but the problem I'm having in applying the regulation to this type of a salesperson is that the regulation does draw a distinction between sales and promoting sales efforts. And the problem you have factually is there is no direct correlation between the number of prescriptions that Dr. Smith writes and how much of an incentive, commission, bonus, whatever you want to call it the detailman gets who visited Dr. Smith, right? There's not a direct correlation, but that is not a requirement anywhere in the statute or the regulations. In fact, to answer Judge Schroeder's question, if you look at the preamble, there was a specific concern raised that we don't want this exemption to only apply if people are precisely being compensated by a very clear-cut commission formula. And the department responded to that and they said that the regulations it does not foreclose the exemption for employees who receive other types of compensation. So they made it clear that as long as there is some type of an approach that rewards the person for their sales efforts and there is absolutely no dispute in the record that they were rewarded for their sales efforts. If they increased prescriptions specifically in their territory based on the doctors that they were specifically visiting they were eligible for tens, twenty thousands of incentive bonuses. Did it go down to prescriptions from the doctors that they ordered from or was it just a kind of a northern Illinois kind of thing? It was specifically their territory and they were responsible for all the doctors in their territory. So there was only one per territory? Ms. Donnelly had her own territory. I believe Mr. Yacoubian had his own territory. I believe Mr. Bickley and Mr. Delgado were teammates. They shared a territory. But there weren't a whole bunch, there weren't hundreds of these people. Absolutely not. They were territory specific and that's how the compensation, it was territory specific. But is it part of the problem that it's impossible to track to an individual prescription which doctor wrote that prescription? That information is not easily obtainable. I think they are able to track doctors prescribing habits. They can't obviously find out which particular patients are being prescribed what products. But the compensation system is based on increases in prescriptions in the territory. But that's different from being able to track it to an individual prescription. That's how I read the record here. I know at least as far as the compensation goes, it's not based on specific doctors. It's based on increases in the territory. Stimulating demand in the territory. They're not just stimulating demand. That's the distinction here. They are going to doctors one-on-one and sitting in front of them and saying, let me tell you about my product. Here's some samples. Will you prescribe my product? Will you commit to prescribing my product? This is not some generalized promotion work. This is very specific one-on-one salesmanship. What is promotion work? Sure. I think that can be a little bit misleading in terms of the distinction. Because the distinction is not between sales and promoting. This goes back to my earlier point. Promotion work under section 541.503 may or may not be exempt outside sales work. That gets to the very concern I have. You have given us a plausible reason why the regulation means what you say it does. But there is likewise another plausible meaning on the other side. If we have ambiguity isn't that what ours is all about? Don't we have to defer to the Department of Labor's understanding and construction of its own regulation? For several reasons I would say not. For example they have to be constructing all of their regulations and they are not doing that here. I already said nothing about what was in the preamble. There is a specific regulation that says that an employee is considered to be selling goods if the employee performs any work that in a practical sense is an essential part of consummating the sale of the particular goods. That is 779.241. So again, no discussion of that regulation in the Department of Labor's brief. You are saying that the Department of Labor neglects in its amicus brief to mention some part of the regulation that we don't give it our deference? If they are going to interpret the regulations they have to interpret all the regulations. They can't just pick one and ignore the rest and say, okay, now you have to give us deference. That's an interesting proposition. Do you have any case law authority for that? There are several cases where essentially in fact Judge Schroeder said that DOL opinions are not binding on the court if they are inconsistent with the regulations they interpret. That's in the Amada v. City of Hercules case. The same finding was recently made by the Ninth Circuit in Combie v. Woody Woo. Those are slightly different facts. In this situation Woody Woo. Here you've got a situation where the regulation can arguably be construed either way. Do you agree with that? I don't agree. As far as you're concerned, this is a one-way Jose deal, right? Because their position is it has to be consummating sales. And the regulation doesn't say that. The regulation is very clear in saying it doesn't have to be consummating sales. In fact, recently the Eleventh Circuit in Gregory v. Williams' first title, a case from 2009, even though the employee in that case said, I'm not consummating sales, I'm just getting orders. And the court said, nevertheless, you're exempt. When we look at the purpose and spirit of the exemption, when we look at the regulations about directing efforts towards the consummation of a sale, the court said, you're exempt. So that's another example of where deference would not be due. The final case is Taylor v. Progress Energy where the Fourth Circuit said if the Department of Labor's position is inconsistent with its preamble, it's not entitled to deference. And again, this preamble specifically says if the customer submits the order, the salesperson is still eligible for the exemption. And again, that's the situation. The customer may or may not submit the order. But if they do submit the order, a sale is made. And that's what happens here. The prescription is the order. And it's also why it's in other dispositions. But doesn't the record show that these folks are not involved in the writing of prescriptions nor do they supervise them, nor indeed do they keep track of them? The sales representatives? Yeah, they don't. The way they do it is they visit the doctor. I understand that. I'm just saying, are you telling me that the PSRs can tell from day to day what prescriptions are written by the doctors of those products? They do have access to a doctor's prescription. Can they tell exactly what they've done with respect to their visit? When they go back to the doctors, they can say, I wanted to follow up and find out if you're not sure. Oh sure, but that's a very general thing. Have you prescribed X or Y? But I'm saying in a specific way. There's no, for example, a computer program where a couple of days later they go back and find that Dr. X has prescribed medication A, B, C, and D in certain quantities. Well, there may be a lag, but they do have access to their prescribing habits, and in fact that's, you know, to talk about the administrative exemption, that's one of the ways that they decide how often to visit doctors is they look at their prescribing habits and see if they are high prescribers, low prescribers, that kind of thing. So they do have access to that data. Now where do they get that data from? I know it's available. They can look it up on their computers. Facebook? No, it's not. It's a company system. Just to make a couple other real quick points about deference, the Department of Labor brief doesn't even say that it's interpreting ambiguous regulations. It doesn't even take that position. And under Christensen v. Harris County, there's no hour deference when the Department of Labor isn't taking the position that it's interpreting ambiguities. I think the last point why deference wouldn't be appropriate is the unfair surprise element under Long Island Care v. Koch, where this position of the Department of Labor was stated for the very first time in 2009. It's never been stated before and we would submit that's another reason for not according deference under our. Just very quickly to talk about the administrative exemption is with respect to the administrative exemption, our facts are very different than the facts in Novartis. And in Novartis, the court said that certain facts were not present, but if they were the administrative exemption would apply. And that was planning business objectives, implementing management policies, utilizing authority to deviate from established policies, and providing expert advice. The record reflects that all of that is present in this case. The plaintiffs all testified that they planned business objectives, they prepared long-term business plans for their territories, they evaluated the strengths, weaknesses, opportunities and threats in their territories, both overall and as to specific documents. This was not considered by the district court, right? That's correct. It was fully briefed, but not. But we don't really have any basis for weighing this one, do we? That the district courts have made a factual determination? The case was fully briefed to the district court and was fully briefed to this court. It did in both. Yes, in fact, if you look at the regulations, they do say that it is possible for you to be both. They're not mutually exclusive. From our perspective, we'll take either one. But the regulations do say that you can be both. And our position here is that you can be both. And I just wanted to say on the other disposition language, one thing about that, if you look at the court below found that the prescription was an other disposition. And if you look at the dictionary definition, it talks about another disposition as being the actual power of disposing. And in this industry, the prescription is the only way that the product can be disposed of. And we would submit that under both the common sense understanding of what's going on here, as well as  that what happens when a prescription is written, and again, the fact that it may be written after the sales representative leaves, that's immaterial. If you look again at the preamble about the order being submitted later, the fact is that if they are achieving that result, that is making sales the way this industry makes sales. Alright, Pat, you have Easter time. I'll give you a minute on your part. I'll let him go over a minute. I'll make it very quick, Your Honor. I think the panel understands the issue. First of all, the Department of Labor is here. What kind of deference are they entitled to? We'll ask them. The defendants say that they've been interpreting their regulations incorrectly. I don't think that's the case. I think they're entitled to our deference. They've had opinion letters about tissue coordinators where they're selling a concept. They've written opinion letters about That was the question that occurred to me. That procedure has not been invoked in this case. We haven't asked the Department of Labor to render an official opinion letter, have we? I don't believe anybody has. The defendants might have. There's no evidence in the record that the Department has issued a formal opinion letter on this issue. All we have is an amicus brief. That's more than enough, Your Honor. That's the question. The point is that they're here to talk about how they interpret their regulations. Should they be entitled to some deference, or should we say, you don't know what you're talking about. We say, you ought to give them some deference here. We'll get to that. Two other points I want to quickly point out. The defendants talked about a commitment that they obtained from the doctor. This is not a commitment to buy. It's a completely different situation. Finally, with respect to the territory question, the pharmaceutical representatives are compensated based upon a territory. Many, many doctors are part of that territory. Well, the question is how many representatives are. There are many representatives. There are many groups that go in there. There's no good way to figure out what the prescriptions are, because not all the pharmacists We'll take a look at the record. Thank you, Your Honor. The matter just argued is submitted for decision. We'll hear the next case, which is Christopher v. SmithKline Beecham Corporation. Here we have the department appearing amicus. What is the time allocation decided on? Can you remind me again?
judges: Schroeder, Tallman, Smith M.